Mike BRACEY, et al., Appellants,

v.

MONSANTO COMPANY,
INC., Respondent.

No. 73301.

Supreme Court of Missouri,
En Banc.

Jan. 28, 1992.

Lynn N. Bock, New Madrid, for appellants.

P. Pierre Dominique, Jefferson City, R. Gerald Barris, Scott C. Helmholz, Springfield, Ill., James R. Reynolds, Kennett, for respondent.

BLACKMAR, Judge.

This case comes to the writer on recent reassignment, after a sinuous history in the appellate courts. This opinion makes use of some of the ideas, research and phraseology of draft opinions by other judges.

The plaintiffs sued for breach of warranty, following their purchase and use of a herbicide known as Lasso. The defendant filed a lengthy motion to dismiss. The trial court sustained this motion without specifying a reason and dismissed the petition with prejudice. The Court of Appeals, Southern District, remanded the case in order to permit the plaintiffs to amend their petition. Both parties then moved for transfer to this Court, the plaintiffs advising that they elected to stand on the petition as filed. We retransferred the case by order, directing the court of appeals to consider the merits of the appeal. That court then reversed and remanded for further proceedings. We again granted trans-

fer because of the importance of the issue of the validity of a limitation on the right to recover damages for breach of warranty in a contract for the sale of goods governed by the Uniform Commercial Code, *Chap. 400.2, RSMo 1986*. We now reverse and remand, for reasons differing substantially from those adduced by the court of appeals.

The petition has two counts, Count I charging breach of express warranty and Count II breach of implied warranty. The plaintiffs are tenants of land in New Madrid and Pemiscot Counties, on a "cropyield" arrangement. Their petition states that they purchased 95 pounds of Lasso, a herbicide manufactured by the defendants, from an intermediate supplier; that the product did not conform to the defendant manufacturer's representations; and that as a result the plaintiffs' crop yield was greatly diminished. The petition specifically charged that the limitation of warranty described below "causes the warranty to fail of its essential purpose," borrowing the phraseology of *§ 400.2–719(2), RSMo 1986*, a part of the Uniform Commercial Code. The petition is lacking in detail as to the precise failures of conformity to representations and the cause of the diminished crop yield. The plaintiffs took a substantial risk by electing to stand on the petition without amendment, but we find it minimally sufficient to present the issues we now consider.

The motion to dismiss is prolix, containing 17 paragraphs as to Count I and 14 as to Count II. The defendant also filed an alternative motion for more definite statement, on which a ruling was unnecessary once the motion to dismiss was sustained. This unruled motion should now be ruled on remand. The motion to dismiss asserts various substantive and procedural grounds for dismissal, but the defendant has not sought to justify the bulk of these in the briefing. We perceive no fatal procedural flaws in the petition, and so limit our consideration to the matters briefed.

■ An order dismissing a petition with prejudice is erroneous if the petition, reasonably construed, sets forth any theory supporting recovery.[1] Tested by this standard, the ruling of the trial court is clearly in error because the challenged warranty seeks only to limit damages and not to preclude all recovery. But the plaintiffs seek damages substantially in excess of the limitation, and so we must consider the issue of validity.

### Necessary Parties

We deal first with a procedural issue. The defendant asserts in the motion to dismiss that there may be a want of "necessary parties" because the rights of the plaintiffs and their landlords are not clearly defined in the petition. This point is advanced in the briefing as an additional reason supporting the trial court's ruling.

■ Failure to join a necessary party, however, is not ground for dismissal. *Rule 52.06.* There is a recognized distinction between an "indispensable party," without whose presence a case may not be maintained, and a "necessary party," who should be made a party in order that there may be a complete determination of the controversy at hand, but whose presence is not essential to a determination of the issues between the parties.[2] If it is claimed that necessary parties who are subject to the processes of the court are not present, the remedy is not by a motion to dismiss but rather by motion to add the parties deemed to be necessary. *Rules 52.06* and *55.27(a)(7).* If the defendant is of the opinion that it may be subjected to multiple recovery if the landlords are not made parties, it may move to bring them in. *Rules 52.04(a)* and *57.*

If the facts stated are true, moreover, the plaintiffs are entitled to recover the full damages allowable for the breach of war-

---

1. *See Asaro v. Cardinal Glennon Memorial Hospital,* 799 S.W.2d 595 (Mo. banc 1991).

2. *See generally Rules 52.04(a)* and *(b)* discussing necessary and indispensable parties. *See also*

15 Wheaton, *Missouri Practice § 52.04(a)–1 (1976);* 7 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure § 1604 (2d ed. 1986).*

ranty. They purchased and used the product. There is no showing of a contractual relation between the landlords and the supplier of the herbicide. It is of no moment to the defendant that the plaintiffs might be obliged to account to others for any part of their recovery, (if, indeed, they are so obliged, about which we express no opinion).

### Unconscionability

■ The "LIMIT OF WARRANTY AND LIABILITY" attacked as unconscionable reads as follows:

This company warrants that this product conforms to the chemical description on the label and is reasonably fit for the purposes set forth in the complete Directions for Use label booklet ("Directions") when used in accordance with those Directions under the conditions described therein. NO OTHER EXPRESS OR IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE OR MERCHANTABILITY IS MADE. This warranty is also subject to the conditions and limitations stated herein.

Buyer and all users shall promptly notify this company of any claims whether based in contract, negligence, strict liability, other tort or otherwise.

\* \* \* \* \* \*

THE EXCLUSIVE REMEDY OF THE USER OR BUYER AND THE LIMIT OF THE LIABILITY OF THIS COMPANY OR ANY OTHER SELLER FROM ANY AND ALL LOSSES, INJURIES OR DAMAGES RESULTING FROM THE USE OR HANDLING OF THIS PRODUCT (INCLUDING CLAIMS BASED IN CONTRACT NEGLIGENCE, STRICT LIABILITY, OTHER TORT OR OTHERWISE) SHALL BE THE PURCHASE PRICE PAID BY THE USER OR BUYER FOR THE QUANTITY OF THIS PRODUCT INVOLVED, OR, AT THE ELECTION OF THIS COMPANY OR ANY OTHER SELLER, THE REPLACEMENT OF SUCH QUANTITY, OR, IF NOT ACQUIRED BY PURCHASE, REPLACEMENT OF SUCH QUANTITY IN NO EVENT SHALL

THIS COMPANY OR ANY OTHER SELLER BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES.

The buyer and all users are deemed to have accepted the terms of this LIMIT OF WARRANTY AND LIABILITY which may not be varied by any verbal or written agreement.

*Section 400.2–719, RSMo 1986,* is part of the Uniform Commercial Code, adopted in Missouri in 1963. It authorizes contractual modifications or limitations of remedies for breach of warranty, in the following terms:

(1) Subject to the provisions of subsections (2) and (3) of this section and of section 400.2–718 on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Any such modifications or limitations, then, are expressly subject to being tested for unconscionability. This brings into play another UCC section; *400.2–302, RSMo 1986. Section 400.2–302,* reading as follows:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at

the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

The petition does not allege unconscionability in express terms. It takes notice of the limitation provisions and charges that this limitation "causes the warranty to fail of its essential purpose," thus invoking the provisions of § *400.2–719(2)*. *Subsection (3)* of *Section 719* states that a limitation of remedy may be invalid if it is unconscionable. We conclude, nevertheless, that the purpose of the action is to challenge the limitation, and that challenges under *Subsection (2)* and *Subseciton (3)* must be considered.

There has been much discussion of the interrelation between *Subsections (2)* and *(3)*.[3] *Subsection (3)* appears to permit the parties to a commercial transaction to agree on the allocation of the risk of failure of the product. To complete the picture, § *400.2–316* permits the total exclusion of express and implied warranties, by conspicuous contract provisions. Because of the inadequacy of the record before us, we resist the temptation to comment further

about the interrelation of the several code sections. The questions should be first addressed by the trial court on remand.

*Subsection (1)* of § *400.2–302, RSMo 1986*, calls for a finding "as a matter of law," and so the question of unconscionability is for the court to decide, and not a jury issue.[4] Under *Subsection 2* of § *400.2–302*, this finding is to be based on evidence, rather than being decided on the pleadings, and § *400.2–719(3)* cautions that "limitation of damages where the loss is commercial" is not prima facie unconscionable. The defendant, by filing a motion to dismiss, does not waive any procedural rights it would otherwise have.[5] Thus the issue of unconscionability cannot be decided adversely to a defendant who does not have the opportunity to present to the trial court such evidence as it thinks appropriate. The present defendant expressly claimed this right in its brief filed with this Court.

Our cases give little guidance on the subject of unconscionability. In *Oldham's Farm Sausage Co. v. Salco, Inc.*, 633 S.W.2d 177 (Mo.App.1982), the court upheld the trial court's refusal to enforce a limitation of liability in connection with the sale of a machine. It concluded that the limitation of remedy could be found to be unconscionable under § *400.2–719(3)* because it was set out in fine print on the back side of the signature page of a lengthy contract. The plaintiffs do not claim that the limitation provisions here involved were inconspicuous or that they were unaware of them. The *Oldham* court also held, without extended discussion, that a "repair or

**3.** *See* G. Fahlgren, *Unconscionability: Warranty Disclaimer and Consequential Damages*, 20 St. Louis U.L.J. 435, 456–459 (1976); E. Samuels, *The Unconscionability of Excluding Consequential Damages Under the Uniform Commercial Code When No Other Meaningful Remedy Is Available*, 43 U.Pitt.L.Rev. 197 (1981); Note, *The Enforceability of Contractual Clauses Excluding Sellers from Liability for Consequential Damages Under Section 2–719 of the Uniform Commercial Code*, 58 Wash.U.L.Q. 317 (1980); G. Wallach, *The Law of Sales Under the Uniform Commercial Code*, par. 11.11(2)(b), 11–61–62 (1981); B. Clark & L. Smith, *The Law of Product Liability*, par. 804(2)(a) at 8–56 (1984); *R.W. Murray Company v. Shatterproof Glass Corp.*, 758 F.2d 266 (8th Cir.1985).

**4.** *See* § 400.2–302(1), RSMo 1986; *see, e.g., Funding Systems Leasing Corporation v. King Louie International, Inc.*, 597 S.W.2d 624 (Mo. App.1979).

**5.** *Rule 67.02* states:

[t]he filing of such motion [to dismiss] does not constitute a waiver of defendant's right to offer evidence.

*See also Walker v. DePaul Hospital*, 682 S.W.2d 156 (Mo.App.1984), holding that a motion to dismiss is the "proper procedural tool to challenge a petition...." *Id.* at 158, *citing Morgan v. Morgan*, 555 S.W.2d 378 (Mo.App.1977).

replace" limitation excluding consequential damages did not provide a "minimum adequate remedy" for damages arising out of the constant and long-term malfunctioning of a machine that the seller made futile efforts to correct and that caused substantial damage to the user's product. Thus, borrowing the terminology frequently used by analysts and commentators, *see Note 8, infra,* the court found both procedural and substantive unconscionability. Without a more adequate record we cannot say that that case is factually close to this one or how helpful it is in resolving the ultimate issues in the case.

The term "unconscionability" is not defined by statutory language. We do not think that, at this point, we should prescribe detailed ground rules for the trial court's decision on remand. In traditional Missouri "instructionese," it might be said that the statutory provisions give the trial court a "roving commission." Further expostulation should await the development of the evidence. The statute mentions the "commercial setting, purpose and effect" of the questioned contract terms. The parties on remand may develop the record as they think wise.

We deem it not inappropriate, however, to suggest available sources of guidance. The drafters of the Uniform Commercial Code accompanied their product with comments, which, however, are not a part of the Code.[6] Commentators have sought to fill the void created by this general language.[7] It is suggested that there are procedural and substantive aspects of unconscionability, the former relating to the formalities of the making of the contract and the latter to the specific contract terms.[8] Quotations about contractual limitations on damages for warranties in connection with herbicides have been in the courts frequently. Several state courts of last resort have held the limitations to be valid and not unconscionable.[9] At least one state Supreme Court disagrees.[10] Most of these cases have been appealed after trial.[11] There is a paucity of detail about the evidence considered by the several trial courts on the unconscionability issue. The statutory language leaves it to the litigants to develop the record. We have no occasion at this point to endorse any particular decision from another jurisdiction.

■ We note also that, if the trial court finds unconscionability, it has very broad discretion in further proceedings. According to *§ 400.2–302(1), RSMo 1986,* it may refuse to enforce the contract (which would obviously be inappropriate here). It may also enforce the remainder of the contract, free from the provisions deemed to be unconscionable. Or it may limit the application of the offending clause in order to avoid an unconscionable result. The parties of course may address the trial court as to how a finding of unconscionability, if made, is to be implemented.

---

6. *See Groppel Company, Inc. v. U.S. Gypsum Co.,* 616 S.W.2d 49 (Mo.App.1981) (UCC comments are appropriately considered for guidance but do not constitute binding authority).

7. *See generally* Leff, *Unconscionability and the Code—The Emperor's New Clause,* 115 U.Pa. L.Rev. 485 (1967); J. Spanogle, *Analyzing Unconscionability Problems,* 117 U.Pa.L.Rev. 931 (1969); *see also Note 3, supra.*

8. Leff, *supra,* at 487. *See Funding Systems Leasing Corporation v. King Louie International, Inc.,* 597 S.W.2d 624 (Mo.App.1979).

9. *See Southland Farms, Inc. v. Ciba–Geigy Corporation,* 575 So.2d 1077 (Ala.1991); *Kleven v. Geigy Agricultural Chemicals,* 303 Minn. 320, 227 N.W.2d 566 (1975). *Accord Monsanto Agri-*

*cultural Products Company v. Edenfield,* 426 So.2d 574 (Fla.Dist.Ct.App.1982); *Slemmons v. Ciba–Geigy Corporation,* 57 Ohio App.2d 43, 385 N.E.2d 298 (1978).

10. *See Durham v. Ciba–Geigy Corporation,* 315 N.W.2d 696 (S.D.1982), affirming a finding of unconscionability. *See also Johnson v. Monsanto Company,* 303 N.W.2d 86 (N.D.1981), in which a trial court's finding of unconscionability was not challenged.

11. *See, e.g., Durham,* 315 N.W.2d at 697, and *Kleven,* 227 N.W.2d at 568, each affirming a finding of validity of the limitation. In *Southland Farms,* the Supreme Court of Alabama appears to have sustained a limitation without hearing, in responding to questions submitted by a United States Court of Appeals.

The judgment is reversed. The case is remanded for further proceedings.

ROBERTSON, C.J., and COVINGTON, HOLSTEIN, BENTON and THOMAS, JJ., concur.

RENDLEN, J., dissents in separate opinion filed.

RENDLEN, Judge, dissenting.

For the following reasons, I respectfully dissent. Plaintiffs appeal dismissal of their damage action brought on implied and express warranties for an allegedly unfit herbicide. The petition alleges an unfit or nonconforming material ("Lasso") manufactured by Monsanto was ruinous to their crops and in response Monsanto moved for dismissal citing a variety of reasons why the petition failed to state a cause of action. The trial court, without articulating its rationale, dismissed the action with prejudice and on review the Court of Appeals, Southern District, reversed the judgment and would have required reinstatement of plaintiff's petition.

On review of a dismissal for failure to state a cause of action, all allegations of the petition are taken as true, the stricken pleading afforded its broadest intendment and all reasonable inferences favoring the pleader are to be indulged. *Ritterbusch v. Holt,* 789 S.W.2d 491, 492 (Mo. banc 1990). A petition is sufficient to withstand a motion to dismiss for failure to state a claim if it invokes substantive principles of law entitling plaintiff to relief and alleges ultimate facts informing defendant of that which plaintiff will attempt to establish at trial. *Fischer, Spuhl, Herzwurm & Associates Inc. v. Forrest T. Jones & Co.,* 586 S.W.2d 310, 315 (Mo. banc 1979). It is not to be dismissed for mere lack of definiteness or certainty or because of informality in the statement of an essential fact. *Merriman v. Caton,* 395 S.W.2d 106, 109 (Mo. 1965).

In the petition it is alleged that in 1986, appellants leased approximately 500 acres of farm land in New Madrid and Pemiscot Counties and in March of that year, purchased ninety-five gallons of herbicide from Adams Farm Center, Inc. labeled "Lasso", manufactured and marketed by Monsanto. Application of the herbicide diminished their corn yield by 13,590 bushels resulting in a loss of $30,849.30. Suit was brought in May of 1987, seeking recovery for the diminished yield alleging breach of express and implied warranty alleging: "That Defendant Monsanto represented that the herbicide product "Lasso" is expressly warranted by Defendant "MONSANTO" to be "reasonably fit" for the purposes set forth in the complete directions for use label booklet ("Directions") when used in accordance with those Directions under the conditions described therein" and "The "Lasso" did not conform to such representation made by Defendant, "MONSANTO.""

When plaintiffs purchased the herbicide, they received a "label booklet" detailing the various warranties, instructions and warnings relative to the use of the product. Pertinent portions of the booklet state:

Read "LIMIT OF WARRANTY AND LIABILITY" before buying or using. If terms are not acceptable, return at once unopened.

## LIMIT OF WARRANTY AND LIABILITY

This company warrants that this product conforms to the chemical description on the label and is reasonably fit for the purposes set forth in the complete Directions for Use label booklet ("Directions") when used in accordance with those Directions under the conditions described therein.

.    .    .    .    .

THE EXCLUSIVE REMEDY OF THE USER OR BUYER AND THE LIMIT OF THE LIABILITY OF THIS COMPANY OR ANY OTHER SELLER FOR ANY AND ALL LOSSES, INJURIES OR DAMAGES RESULTING FROM THE USE OR HANDLING OF THIS PRODUCT (INCLUDING CLAIMS BASED IN CONTRACT NEGLIGENCE, STRICT LIABILITY, OTHER TORT OR OTHERWISE) *SHALL BE THE PURCHASE PRICE PAID BY THE USER OR BUY-*

*ER FOR THE QUANTITY OF THIS PRODUCT INVOLVED, OR, AT THE ELECTION OF THIS COMPANY OR ANY OTHER SELLER, THE RE-PLACEMENT OF SUCH QUANTITY, OR, IF NOT ACQUIRED BY PUR-CHASE, REPLACEMENT OF SUCH QUANTITY IN NO EVENT SHALL THIS COMPANY OR ANY OTHER SELLER BE LIABLE FOR ANY INCI-DENTAL OR CONSEQUENTIAL DAM-AGES.*

The buyer and all users are deemed to have accepted the terms of this LIMIT OF WARRANTY AND LIABILITY which may not be varied by any verbal or written agreement. (Emphasis added.)

Monsanto's motion to dismiss focused principally upon the "LIMIT OF WARRANTY AND LIABILITY" section as a bar to recovery for consequential damages.[1]

The main issue for consideration is whether the "LIMIT OF WARRANTY AND LIABILITY" set forth above bars recovery of consequential damages or, as whether as plaintiffs urge, such limit is unconscionable and thus unenforceable or is unenforceable because the limited remedy fails of its essential purpose.

## EXPRESS AND IMPLIED WARRANTIES

Both parties properly argue that this transaction is covered by the Uniform Commercial Code (UCC) as a "sale of goods" within the meaning of that phrase as employed in the statutes, §§ 400.2-102 and 400.2-105(1).[2] Chapter 400, which embodies the UCC, is to be liberally construed and applied to promote simplification, clarity and modernization of the law governing commercial transactions, to permit the continued expansion of commercial practices, and to make uniform the law among the various jurisdictions. § 400.1-102(1).

Under § 400.2-719[3], the central issues are, first, whether the limit on consequential damages provided in Monsanto's label booklet is unconscionable and, second, whether the restrictive remedy afforded therein fails of its essential purpose. Plaintiffs invite this Court lump the requirements of 400.2-719(2) and (3) under a broad unconscionable test, but I would decline so to do. Rather, I believe we should first determine whether the limitations imposed under Monsanto's "LIMIT OF WARRANTY AND LIABILITY" are unconscionable, hence unenforceable as to consequential damages.

There is little Missouri case law defining the statutory term "unconscionable". In *Funding Systems Leasing Corporation v. King Louie International, Inc.,* 597 S.W.2d 624 (Mo.App.1979), unconscionability has application to both the "substantive" or "procedural" aspects of a transaction. *Id.* at 634. Substantive unconscionability refers to undue harshness in the contract terms themselves, whereas procedur-

---

**1.** The parties treat the damages to the corn crop as consequential damages. Consequential damages are partially defined in § 400.2-715 as "damages resulting from the seller's breach" including "injury to person or property proximately resulting from any breach of warranty."

**2.** All citations to Missouri statutes are to RSMo 1978, in effect at the time of the purchase of Lasso. The Uniform Commercial Code (U.C.C.) has been adopted in Missouri as Chapter 400, RSMo 1978. After the chapter number Missouri sections are numbered as in the Code.

**3.** § 400.2-719. Contractual modification or limitation of remedy

(1) Subject to the provisions of subsection (2) and (3) of this section and of section 400.2-718 on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

al unconscionability involves examination of the contract formation process, centering on the pressure exerted by the parties, the fine print of the contract, misrepresentation, or unequal bargaining position. *Id.* Generally before a contract or clause can be voided as unconscionable under § 400.2–302 [4], both procedural and substantive unconscionability must be found. *Id.* In the application of these concepts, it has been suggested that there must be a balancing between the substantive and procedural aspects, and that if there exists gross procedural unconscionability, then not much is needed by way of substantive unconscionability, and that the same "sliding scale" be applied if there is great substantive unconscionability but little of a procedural nature. *Id.* [Citation omitted.]

Turning to the contract formation process, plaintiffs cannot claim surprise as to the disclaimer. The "LIMIT OF WARRANTY AND LIABILITY" clause appears on the first page of the product booklet which appellants received when purchasing the herbicide. The disclaimers are conspicuous, as that term is used in § 400.2–316; however, I recognize the parties' disparate bargaining positions. The purchase was necessarily on Monsanto's terms or not at all as plaintiffs had neither the opportunity nor the power to negotiate the terms of their purchase.[5] They had no alternatives to Monsanto's disclaimers for as Monsanto concedes, the disclaimer it employs "is virtually the same as the limitations of warranty and liability language used by *all* the manufacturers of herbicides." (Emphasis added.) Though the record is not yet fully developed, it may be reasonably inferred from the pleadings that plaintiffs are not a large scale farming operation. The 500 acres the plaintiffs leased does not, as Monsanto urges, indicate the plaintiffs by modern standards are "large scale" farmers.

Examining next the issue of substantive unconscionability, it should first be observed that Comment 1 to § 400.2–719 states:

it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.

Monsanto alleges that its offer to refund the purchase price or replace the herbicides meets the requirements of a minimum adequate remedy and asserts that "no Missouri decision has ever set aside a manufacturer's warranty or liability limitation on grounds of unconscionability under 2–719(3)." To the contrary, in *Oldham's Farm Sausage Company v. Salco, Inc.*, 633 S.W.2d 177 (Mo.App.1982), the court held unconscionable a manufacturer's limitation of liability that attempted to exclude consequential damages where such damages approximated $215,000 and the manufacturer attempted by use of its warranty limitations to limit recovery to $4,400. Measuring the limitation clause against the comments to 400.2–719(3), the court found that the limitation failed to allow a "minimum adequate remedy." *Id.* at 183. Such is the case before us. Monsanto would restrict appellants' recovery to $1,449.70, representing the purchase price of the herbicides, or in lieu thereof replace the herbicide with more of the same. The first provides no "adequate remedy" to these

4. The reference to unconscionability in § 400.2–719(3) must be read in conjunction with § 400.2–302 which states:

Unconscionable contract or clause

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

5. We should be mindful that plaintiffs did not purchase the herbicides directly from Monsanto but through a retail "middleman". Such does not alter the position of Monsanto to dictate terms to the eventual purchaser.

plaintiffs whose source of income has been substantially impaired by Monsanto's product and the second is meaningless for the damage to plaintiffs' crops cannot be rectified after the fact by the addition of more herbicide.

In reaching this conclusion, I am mindful of the manner a number of sister state courts have dealt with the issue. As Monsanto notes in its brief, a majority of states which having dealt with the issue have ruled in the manufacturer's favor. In *Kleven v. Geigy Agricultural Chemicals*, 303 Minn. 320, 227 N.W.2d 566 (1975), the Court held it was not unconscionable for a manufacturer of herbicide to disclaim consequential damages for the failure of its product. *Id.* 227 N.W.2d at 572. That because of the nature of the product and "the multitude of conditions and factors that affect its effectiveness" such as soil, weather, seed, and weeds, limited favorable results could be anticipated. *Id. See also, Southland Farms, Inc. v. Ciba–Geigy Corporation*, 575 So.2d 1077 (Ala.1991); *Monsanto Agricultural Products Company v. Edenfield*, 426 So.2d 574 (Fla.App. 1982); *Slemmons v. Ciba–Geigy Corp.*, 57 Ohio App.2d 43, 385 N.E.2d 298 (1978); *Earl Brace & Sons v. Ciba–Geigy Corporation*, 708 F.Supp. 708 (W.D.Pa.1989).

However plaintiffs' position is not without support in the cases from other jurisdictions. In *Johnson v. Monsanto Company*, 303 N.W.2d 86 (N.D.1981), defendant accepted a trial court's ruling that its limitation of warranty and remedy provisions were unconscionable, and in a series of cases decided in South Dakota, it was held that limitations upon consequential damages by herbicide manufacturers and seed companies were unconscionable. *Durham v. Ciba–Geigy Corporation*, 315 N.W.2d 696 (S.D.1982); *Hanson v. Funk Seeds International*, 373 N.W.2d 30 (S.D.1985);

*Herrick v. Monsanto Company*, 874 F.2d 594 (8th Cir.1989) (applying South Dakota law)[6]. The court in *Durham* stated:

... loss of the intended crop due to ineffectiveness of the herbicide is inevitable and potential plaintiffs should not be left without a remedy. Furthermore, the purchasers of pesticides are not in a position to bargain with chemical manufacturers for contract terms more favorable than those listed on the pre-printed label, nor are they in a position to test the effectiveness of the pesticide prior to purchase.

*Durham v. Ciba–Geigy Corporation*, 315 N.W.2d at 701. I find such observations persuasive and would hold that the consequential damages disclaimer contained in Monsanto's "LIMIT OF WARRANTY AND LIABILITY" provision to be unconscionable and, therefore, unenforceable.

As a final defense for the order of dismissal, Monsanto argues that there is insufficient evidence to support a determination of unconscionability and that the petition is devoid of facts that would support the position I believe this Court should take today. Monsanto also claims it has been deprived of its right under § 400.2–302(2)[7] to present evidence to the circuit court on the issue of unconscionability. I submit that these contentions are without merit.

The elemental facts necessary for a determination of unconscionability have been presented to this Court by the parties in their pleadings and briefs. When this matter was first appealed, the court of appeals remanded the proceeding to afford plaintiffs an opportunity to amend their petition in response to the dismissal. In their application for transfer to this Court on the court of appeals' first opinion, plaintiffs announced their intention to stand on the allegations of their petition.[8] This appar-

---

6. Though as noted in *Herrick,* the South Dakota legislature has enacted legislation to overturn the results in *Durham* and *Hanson,* our focus must be upon the courts' analysis of the objected to warranty provisions and application of the U.C.C. to those provisions.

7. Section 400.2–302(2) reads:

When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

8. In the original appeal of this matter, the court of appeals had determined that the trial court

ently was the position plaintiffs assumed in the trial court. Section 400.2–302(2) provides that when the issue of unconscionability is raised "the parties shall be afforded a reasonable opportunity to present evidence" on that issue. Early on Monsanto was noticed that Plaintiffs sought to rely upon the claim of "unconscionability." While the statute provides that the parties are to be given a "reasonable opportunity" to present evidence, it does not mandate that an evidentiary hearing be held, hence Monsanto has waived any claim it may have to a hearing under § 400.2–302(2). Further, there is no prejudice resulting from Monsanto's waiver[9], and, accordingly its argument that it has been denied a right to trial by jury is not well taken.

Having concluded that the consequential damages disclaimer is unconscionable, I feel there is no need to address plaintiffs' § 400.2–719(2) allegation that the limited remedy fails of its essential purpose but this issue remains a part of the case.

For these reasons, I would reverse the judgment and remand to the trial court with directions to reinstate plaintiffs' action for further proceedings and with the further direction the court shall declare as a matter of law that the consequential damages disclaimer of Monsanto is unconscionable and unenforceable in this case.

---

was in error in dismissing plaintiffs' petition without first affording plaintiffs an opportunity to amend their pleadings. Plaintiffs sought transfer to this Court and upon learning of plaintiffs' intentions to stand upon their petition as pleaded, we retransferred the proceeding to the court of appeals to decide the substantive matters involved.

9. Although the parties might have insisted upon such a hearing before the circuit court the facts alleged in the petition taken as true, are sufficient for our holding today and Monsanto fails to cite in its brief to any relevant facts presented on appeal.