The United States Court of Appeals for the Eleventh Circuit has presented this certified question pursuant to Rule 18, A.R.App.P. 914 F.2d 220.
The Court of Appeals submitted the following statement of the facts, the procedural history, and the question:
"FACTS
 "Southland Farms, Inc., is an Alabama corporation engaged in growing and marketing potatoes. Bobby Faust is the manager of Southland Farms and he and his wife own all Southland stock. Faust is an experienced businessman/farmer and has engaged in potato farming for over thirty years.
 "Ciba-Geigy Corporation manufactures and distributes agricultural chemical products. Riverside/Terra Corporation distributes Ciba-Geigy products in Alabama. In 1987, Southland purchased over $100,000 of Dual and Ridomil, two Ciba-Geigy products, from Riverside. Southland first used Ridomil in 1986 and had used Dual during the preceding five to six years.
 "Ciba-Geigy's products are labeled with instructions for usage, a limitation of remedy, and an exclusion of consequential damages. The label reads:
 " 'DIRECTIONS FOR USE AND CONDITIONS OF SALE AND WARRANTY. IMPORTANT. Read the entire Directions for Use and the Conditions of Sale and Warranty
before using this product.
"CONDITIONS OF SALE AND WARRANTY
 " 'The Directions for Use of this product reflect the opinion of experts based on field use and tests. The directions are believed to be reliable and should be followed carefully. However, it is impossible to eliminate all risks inherently associated with use of this product. Crop injury, ineffectiveness, or other unintended consequences may result because of such factors as weather conditions, presence of other materials, or the manner of use or application all of which are beyond the control of CIBA-GEIGY or the Seller. All such risks shall be assumed by the Buyer. CIBA-GEIGY warrants that this product conforms to the chemical description on the label and is reasonably fit for the purposes referred to in the Directions for Use subject to the inherent risks referred to above. CIBA-GEIGY makes no other express or implied warranty of fitness or merchantability or any other express or implied warranty. In no case shall CIBA-GEIGY or the Seller be liable for consequential, special, or indirect damages resulting from the use or handling of this product. CIBA-GEIGY and the Seller offer this product, and the Buyer and user accept it, subject to the foregoing Conditions of Sale and Warranty, which may be varied only by agreement in writing *Page 1079 
signed by a duly authorized representative of CIBA-GEIGY.'
 "Southland purchased the products to prevent nut grass and potato rot. After using the products on the potato fields, Southland experienced problems with nut grass and rot which damaged a portion of its 1987 crop.
"PROCEDURAL HISTORY
 "Southland sued Ciba-Geigy in the United States District Court alleging breach of an express warranty and seeking consequential damages including cost of the field preparation, fertilizer, seed potatoes, crop dusting, labor, and lost profits. Ciba-Geigy moved for partial summary judgment contending that the disclaimer label on the product precluded Southland Farms from recovering consequential damages. The district court adopted a United States Magistrate's recommendation and granted Ciba-Geigy's motion for partial summary judgment. This appeal followed.
 "Question certified to the Alabama Supreme Court:
 " 'Whether the disclaimer on Ciba-Geigy's product is unconscionable and precludes the recovery of consequential damages.'
 "The particular phrasing of the above-certified question is intended as a guide and not meant to restrict the Supreme Court's consideration of the issues or the manner in which it gives its answer. . . ."
The question of law certified to us is whether the disclaimer on the CIBA-GEIGY label is unconscionable or is reasonable under the Uniform Commercial Code (Ala. Code 1975, § 7-1-101 et seq.) and thus precludes the recovery of consequential damages.
We summarized the law in Alabama with respect to the unconscionability of a contract in Wilson v. World OmniLeasing, Inc., 540 So.2d 713, 716 (Ala. 1989). There, we cited comment 1 of the official comments to § 7-2-302, Code 1975, which sets forth the basic test to determine unconscionability:
 "The basic test is whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power."
540 So.2d at 716. (Citation omitted.) As we noted inWilson, an unconscionable bargain or contract is "one that no man in his senses, not under delusion, would make on the one hand, and that no fair and honest man would accept on the other." Id., Central Mining, Inc. v. Simmon Machinery Co.,547 So.2d 529, 531 (Ala. 1989). Unconscionability includes "an absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." 540 So.2d at 713, citing WestPoint-Pepperell, Inc. v. Bradshaw, 377 F. Supp. 154
(M.D.Ala. 1974), and Williams v. Walker-Thomas Furniture Co.,350 F.2d 445 (D.C. Cir. 1985).
The Uniform Commercial Code recognizes the validity of a limitation or exclusion of consequential damages where the loss is commercial. Ala. Code 1975, § 7-2-719(3), reads as follows:
 "(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." (Emphasis added.)
This Court has confirmed the validity of risk-shifting provisions in the commercial context in Kennedy Electric Co. v.Moore-Handley, Inc., 437 So.2d 76 (Ala. 1983), and in Puckett,Taul Underwood v. Schreiber Corp., 551 So.2d 979 (Ala. 1989).
We stated in Puckett, Taul Underwood:
 "Commercial parties may contract freely to limit the remedies available to them. An agreement between parties in *Page 1080 
a commercial transaction 'may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts. . . .' Code 1975, § 7-2-719(1)(a). Thus, the clear public policy in Alabama is to allow a seller to limit the remedies available to a buyer."
551 So.2d at 983.
Where a provision excluding consequential damages is so widely used and accepted in a particular trade that it can be characterized as a "usage of trade," it has been found to be reasonable. Comment 6 to § 7-1-205 makes it clear that a contract clause resting on "usage of trade," while not immune from a charge of unconscionability, is prima facie "reasonable" due to its broad-based commercial acceptance:
 "6. The policy of this Act controlling explicit unconscionable contracts and clauses (Sections 7-1-203, 7-2-302) applies to implicit clauses which rest on usage of trade and carries forward the policy underlying the ancient requirement that a custom or usage must be 'reasonable.' However, the emphasis is shifted. The very fact of commercial acceptance makes out a prima face case that the usage is reasonable, and the burden is no longer on the usage to establish itself as being reasonable. But the anciently established policing of usage by the courts is continued to the extent necessary to cope with the situation arising if an unconscionable or dishonest practice should become standard."
Agricultural chemicals are sold, on an industry-wide basis, subject to an exclusion of liability for consequential damages. The affidavit of Dr. Everett Cowett, director of technical services for the Agricultural Division of Ciba-Geigy, has attached to it sample labels from 18 different pesticide manufacturers, all containing clauses excluding consequential damages. Clauses excluding consequential damages are permitted under the U.C.C. because they are an allocation of unknown or undeterminable risks. Comment 3, § 7-2-719.
The Minnesota Supreme Court found an identical section of a Ciba-Geigy exclusionary clause to be reasonable in Kleven v.Geigy Agricultural Chemicals, 303 Minn. 320, 227 N.W.2d 566
(1975). That court concluded that the facts of nature and the nature of the product made the stated exclusion of consequential damages reasonable. The court reasoned as follows:
 "It is general knowledge, as the trial court in that rural area noted, that the eventual yield of a farm crop, such as corn, is affected by numerous and varied factors such as soil, weather, seed, weeds and other conditions. Considering the nature of the product itself and the multitude of conditions and factors that affect its effectiveness or its degree of effectiveness, limited favorable results could be anticipated. Finally, it is clear that the risks of failure were fairly disclosed to the plaintiffs at the time of purchase in these words:
 " '* * * Crop injury, ineffectiveness or other unintended consequences may result because of such factors as weather conditions, presence of other materials, or the manner of use or application all of which are beyond the control of Geigy or the Seller. All such risks shall be assumed by the Buyer.' "
303 Minn. at 326, 227 N.W.2d at 572. In accord, Earl Brace Sons v. Ciba-Geigy Corp., 708 F. Supp. 708 (W.D.Pa. 1989);Slemmons v. Ciba-Geigy Corp., 57 Ohio App.2d 43, 385 N.E.2d 298
(1978).
In upholding the exclusion clause in Lindemann v. Eli Lilly Co., 816 F.2d 199 (5th Cir. 1987), the Fifth Circuit Court of Appeals noted the commercial context of transactions of this nature. The court noted that the purchaser was an experienced and sophisticated farmer who operated a large holding and had been using the product for years. The court saw these facts as establishing a course of dealing between the parties. These factors, the court felt, indicated that no procedural unconscionability existed. The court further found no *Page 1081 
substantive unconscionability, stating that "the principle of unconscionability is one of preventing oppression and unfair surprise, not the disturbance of allocation of risks because of superior bargaining power." 816 F.2d at 204. The court discussed the fulfilling of the risk-allocation function by such exclusion clauses as that in Lindemann, as follows:
 "The decision of a herbicide manufacturer to limit damages would seem, in the absence of other evidence, abundantly to fulfill this risk-allocation function, because the uncertainties inherent in the agricultural business are legion, and many of them, such as planting, cultivating, harvesting and marketing decisions, are uniquely within the control of the farmer — the . . . customer."
816 F.2d at 204.
As these cases demonstrate, a consequential damages exclusion in the commercial context of the sale of agricultural chemicals is an accepted method of risk-shifting in the industry.[1] Indeed, Southland Farms admits in its brief (p. 16) that the disclaimers on the labels of the Dual and Ridomil products involved here have been upheld in other jurisdictions and that those jurisdictions have held that consequential and incidental damages were not recoverable.[2] There are several reasons that make these clauses an accepted usage of trade: (1) the vagaries of nature and the nature of such products; (2) the fact that the numerous factors affecting crop yield are beyond the manufacturer's control; (3) the fact that if the potential for consequential losses were shifted to the seller, the cost of the product would be prohibitive; and (4) the fact that crop insurance is available to the farmer to mitigate any burdensome effect that such an exclusion would have.
We hold that the disclaimer on Ciba-Geigy's product is reasonable, and, therefore, that the exclusion acts to preclude the recovery of consequential damages.
QUESTION ANSWERED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] The Supreme Court of South Dakota found a disclaimer identical to the one in this case to be unconscionable. Durham v.Ciba-Geigy Corp., 315 N.W.2d 696 (S.D. 1982). However, afterDurham was decided, the South Dakota legislature enacted a statute that negated its holding.
[2] Citing: Kleven v. Geigy Agricultural Chemicals, 303 Minn. 320,227 N.W.2d 566, at 572 (1975); Earl Brace Sons v. Ciba-GeigyCorp., 708 F. Supp. 708 (W.D.Pa. 1989); Slemmons v. Ciba-GeigyCorp., 57 Ohio App.2d 43, 385 N.E.2d 298 (1978).